IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39338-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TIMOTHY LUCIOUS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — In 2010, a jury convicted Timothy Lucious of one count of drive-by shooting and six counts of second degree assault with a deadly weapon. In 2022, Mr. Lucious filed a motion for postconviction DNA testing of ammunition evidence. The trial court denied the motion. We affirm.

BACKGROUND

The incident leading to Mr. Lucious's criminal charges took place in July 2009 when a group of friends went out in Spokane for a birthday celebration. While out at a bar—and then later at a house party—the friends ran into a woman previously unknown to them who was confrontational and aggressive. The woman appeared to be an acquaintance of Mr. Lucious. Eventually, one of the friends arranged to fight the woman at a local park.

When the group encountered the woman near the park, she was with several other people, including Mr. Lucious. The fight began with a physical altercation but things escalated when the woman wielded a razor blade and later a knife. At some point, Mr. Lucious pulled out a handgun and waved it around. The friends got back in their car to leave and Mr. Lucious tapped on the car window with his pistol. Mr. Lucious asked the car's occupants if they remembered him. Mr. Lucious also said, "'Bitch, I'll shoot you'" to one of the friends. 2 Rep. of Proc. (Sept. 13, 2010) at 246, *State v. Lucious*, No. 29545-1-III.

The group started to flee, but soon discovered they had left two of their members behind. As they turned around to retrieve their friends, gunshots rang out. At least one of the group members was hit by a bullet and the group drove off to a hospital. One of the friends was critically injured and required eight days of hospitalization.

Police responded to the hospital and conducted interviews. Several of the group members were shown a photo array and identified Mr. Lucious as the shooter. Law enforcement investigated the scene of the shooting and recovered several 9-millimeter shell casings. They did not find a firearm.

Mr. Lucious was charged with six counts of attempted first degree murder and one count of drive-by shooting.

At trial, the group members testified against Mr. Lucious. All identified Mr. Lucious as their assailant with varying degrees of specificity. Some said they observed him shoot the gun. Others merely testified that they saw Mr. Lucious wielding the gun. Only one of the group members said they knew Mr. Lucious before the night of the shooting. The defense impeached group members with evidence of intoxication and prior false statements.

The jury convicted Mr. Lucious of one count of drive-by shooting and six counts of the lesser-included offense of second degree assault with a deadly weapon. He received a sentence of life in prison as a persistent offender. The convictions were affirmed on appeal. *State v. Lucious*, No. 29545-1-III, slip op. at 1 (Wash. Ct. App. May 23, 2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/295451.pdf.

In July 2022, Mr. Lucious filed a motion under RCW 10.73.170 for postconviction DNA testing of the shell casings. In support of the motion, he submitted a declaration from Carol Vo, a forensic scientist at the Washington State Patrol Crime Laboratory. Ms. Vo declared that she had reviewed the incident report from Mr. Lucious's case and determined no prior DNA testing had been performed. According to Ms. Vo, the shell casings recovered from the crime scene could have yielded DNA evidence pertaining to the individual who had loaded the ammunition into the gun.

The State opposed Mr. Lucious's motion. According to the State, even if testing produced a result favorable to Mr. Lucious, it would merely mean that someone else had handled the ammunition at some point in time. The State argued such a result would not reasonably undermine the jury's verdict.

The trial court agreed with the State and denied Mr. Lucious's motion. In a letter ruling, the court explained:

> . . . [T]he Court is called upon to presume that another individual's DNA would be found on the bullet casings and Mr. Lucious's DNA would not. Mr. Lucious argues that whoever loaded the gun may be the individual responsible for firing the gun the night of the street brawl . . . . However, this theory is weakened by the fact that a gun can be loaded by one individual and fired by another. More compelling, even . . . assuming favorable DNA testing for Mr. Lucious, the favorable DNA testing would not demonstrate his innocence on a more probable than not basis in light of the evidence produced at trial.

> At trial, evidence was admitted that Mr. Lucious was seen holding a firearm by six different witnesses, with five of the witnesses identifying him as the shooter. Even though eye-witness testimony may not be too reliable, the testimony is bolstered in this case due to the number of witnesses who saw Mr. Lucious with a gun. More importantly, it would be improper for the Court to assume the role of the jury and reweigh the credibility of the eye-witness testimony. Credibility determinations of each witness are left to the trier of fact as they are able to observe each witness while subject to direct examination and cross-examination.

> . . . [T]he presumptively favorable DNA results would not demonstrate Mr. Lucious's innocence on a more probable than not basis.

No. 39338-1-III
*State v. Lucious*

Clerk's Papers at 332. The trial court's written order incorporated the letter ruling.

Mr. Lucious timely appeals.

ANALYSIS

Under RCW 10.73.170, an individual incarcerated for a felony offense may file a postconviction motion requesting DNA testing of evidence. The statute imposes procedural[1] and substantive[2] requirements. The procedural components are fairly "lenient," but the substantive requirement is "onerous." *State v. Riofta*, 166 Wn.2d 358, 367, 209 P.3d 467 (2009). We review a trial court's decision on a motion for postconviction DNA testing for abuse of discretion. *State v. Thompson*, 173 Wn.2d 865, 870, 271 P.3d 204 (2012).

The only contested issue in this case is the substantive component of the statute. This provision requires the applicant to show a "likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3). Well-established rules govern whether an applicant has satisfied the substantive component. In considering a request for postconviction DNA testing, a court must afford the movant the presumption that further testing will indicate the absence of the defendant's DNA and

---

[1] *See* RCW 10.73.170(2).
[2] *See* RCW 10.73.170(3).

5

the presence of some other person's DNA. *Riofta*, 166 Wn.2d at 370.[3] The court must assess whether an exculpatory result would so offset the remaining inculpatory evidence that innocence becomes not merely possible, but probable. *See id.* at 369 ("[C]ourts must consider . . . the impact that an exculpatory DNA test could have in light of [the remaining] evidence.").

Applying the foregoing standards, the trial court did not abuse its discretion in concluding Mr. Lucious did not meet the substantive requirement for postconviction DNA testing. The most favorable outcome of testing for Mr. Lucious would be a result revealing the DNA of one or more other persons on the shell casings to the exclusion of Mr. Lucious. But this best-case scenario would not tend to show probable innocence. Loading a gun and firing a gun are two distinct and separate acts that necessarily take place at different points in time. The fact that Mr. Lucious might not have loaded the gun does not tend to show he was not the shooter.[4] Furthermore, given the context of the

---

[3] This standard does not mandate further inferences beyond the presumption of an exculpatory test result. *See State v. Braa*, 2 Wn. App. 2d 510, 521, 410 P.3d 1176 (2018) ("[N]either our Supreme Court nor this [appellate] court has held that a petitioner is entitled to additional inferences in [their] favor beyond the assumption of a favorable DNA test result.").

[4] Mr. Lucious is not entitled to a presumption that the source of any DNA on the ammunition is the person who loaded the firearm. Nevertheless, even giving Mr. Lucious the benefit of that reasoning, he has not satisfied the substantive requirement for DNA testing.

No. 39338-1-III
*State v. Lucious*

State's inculpatory evidence, a DNA result favorable to Mr. Lucious would be of little value. Numerous witnesses identified Mr. Lucious as the shooter. While the eyewitnesses' testimony was not unimpeachable, DNA evidence suggesting Mr. Lucious may not have loaded the firearm would not have contradicted the testimony in any way. No witness ever claimed they saw Mr. Lucious load the gun. Nor would an exculpatory DNA test have augmented any areas of impeachment.

The trial court acted well within its discretion in denying Mr. Lucious's motion for postconviction DNA testing. We therefore affirm the trial court's ruling.

CONCLUSION

The order denying Mr. Lucious's motion for postconviction DNA testing is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____  _____
Lawrence-Berrey, A.C.J.          Staab, J.

7